IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Zita L. Weinshienk

Civil Action No. 04-cv-01171-ZLW-MJW

DAVID CROSBY,

    Petitioner,

v.

GARY WATKINS, Warden, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

## ORDER OF DISMISSAL

The matter before the Court is Petitioner David Crosby's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 (Application). Petitioner is serving a 30-year sentence after conviction in state court on charges of first degree sexual assault, false imprisonment, and prohibited use of a weapon. On June 9, 2004, Petitioner filed the present Application, setting forth three claims. Claim one states that "[t]he trial court erred in refusing to grant motion to suppress Petitioner's statements to police." Claim two states that "[t]he trial court erred in failing to grant motion to dismiss or alternatively for mistrial because of the destruction by police taped statements of the Petitioner and the victim." Claim three states that "[t]he appellate court erred in ruling

that Petitioner had failed to properly raise the issue of deficient counsel for failing to obtain expert medical testimony." Petitioner filed his Application *pro se*.[1]

Pursuant to D.C.COLO.LCivR 72.1, this matter was referred to Magistrate Judge Michael J. Watanabe, who on June 4, 2007, issued a Recommendation On Application For a Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 By A Person In State Custody (Recommendation) in which he recommended that the Application be denied and that this action be dismissed with prejudice. Petitioner thereafter filed Petitioner's Objection To Magistrate's Recommendation. The Court reviews *de novo* those portions of the Recommendation to which Petitioner has specifically objected.[2] Under the *de novo* standard, this Court makes "an independent determination of the issues" and does not "give any special weight to the [prior] determination."[3]

The factual background of this case and the proceedings in the state courts were recited in detail in the Magistrate Judge's Recommendation and will not be repeated herein.

**A.     Legal Standard**

Where a constitutional claim was adjudicated on the merits in state court, an application for a writ of habeas corpus by a person in state custody properly is granted

---

[1] Petitioner was represented by counsel in the state trial court proceedings.

[2] See 28 U.S.C. § 636 (b)(1); see also United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (court's *de novo* review is limited to "any portion of the magistrate judge's disposition to which specific written objection has been made. . . .").

[3] Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1464 (10th Cir. 1988).

2

only where the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established federal law," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[4] The state court's factual determinations must be presumed to be correct.[5]

**B.     Analysis**

    **1.     Motion to Suppress**

Petitioner alleges in his first claim that the state trial court erred in denying his motion to suppress his statements to police. In his Application and supporting Memorandum In Support Of Petition For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 (Memorandum), Petitioner argued that the statements that he made to police before he was given a Miranda warning should have been suppressed because they were made while he was in custody, and that the statements that he made to police after he was given the Miranda warning and waived his Miranda rights were inadmissible because his Miranda waiver was involuntary as a result of his alcohol intoxication. In his objection to the Magistrate Judge's Recommendation, Petitioner asserts that the Magistrate Judge erred by failing to consider the following with respect to Petitioner's motion to suppress: (1) Petitioner's intoxication level at the time that he was given the Miranda warning, specifically, evidence that Petitioner was singing, speaking slowly, was unbalanced, and had bloodshot eyes, and the determination by Lt.

---

[4] 28 U.S.C. § 2254(d)(1), (2).

[5] 28 U.S.C. § 2254(e)(1).

John Dodson of the Avon, Colorado Police Department that Petitioner needed to be placed into protective custody due to his level of intoxication, and (2) the destruction by the Avon Police of audio tapes containing Petitioner's statements to the police, which he asserts "would have helped determine the truthfulness of the polices' version of events."[6]

A waiver of Miranda rights is valid only if it was knowingly, voluntarily, and intelligently made; it "must have been made with a full awareness, both of the nature of the right being abandoned and the consequences of the decision to abandon it."[7] The Magistrate Judge determined that "[w]hile there was evidence that petitioner was intoxicated, the officers testified that petitioner was responsive, seemed to understand questions and responded to them intelligently (State Court Record Vol. 3 at 36 lines 1-5, 38 at lines 4-5), his speech was slow but clear, and he was 'quite coherent' (State Court Record Vol. 3 at 52, lines 9-10, 21)." Petitioner contends that other evidence of his intoxication, specifically, that he was singing,[8] was unbalanced, and had bloodshot eyes, and the fact that Officer Dodson felt the need to place him in protective custody due to his intoxication, indicates that he was so intoxicated that his Miranda waiver was involuntary. The Court disagrees. "The test of whether a person is too affected by

---

[6] Petitioner's Objection To Magistrate's Recommendation (Doc. No. 28) at 1.

[7] People v. May, 859 P.2d 879, 882 (Colo. 1993).

[8] Officer Perez testified at trial that Petitioner "kept talking and sometimes singing." (State Court Record Vol. at 40). Apparently, evidence that Petitioner was singing was not submitted on Petitioner's motion to suppress.

4

alcohol or other drugs voluntarily and intelligently to waive his rights is one of coherence, of an understanding of what is happening."[9] The fact that Petitioner was singing, was unsteady on his feet, and had bloodshot eyes does not, alone, establish that he could not understand the nature of the rights that he was waiving and the consequences of that waiver, in the face of uncontradicted evidence that Petitioner was coherent, spoke clearly, understood questions, and responded intelligently. Specifically, Officer Dodson testified that Petitioner's speech was "slow but clear," that he was "quite coherent" and "was talking like a normal conversation," and indicated that Petitioner did not have slurred speech and did not have to have things repeated to him.[10] Officer Dodson testified that at no point did he feel that Petitioner did not understand the questions being asked of him,[11] and that he placed him in protective custody simply because he smelled of alcohol and Dodson believed that he was intoxicated.[12] There is no evidence in the record before the Court that Petitioner was intoxicated to such a degree that he could not comprehend what was being said to him, including the Miranda warning or the consequences of its waiver.[13] To the contrary, again, Officer Dodson testified that Petitioner was coherent and understood the questions he was asked.[14]

---

[9] U.S. v. Smith, 608 F.2d 1011, 1012 (4th Cir. 1979).

[10] State Court Record Vol. 3 at 52-53.

[11] Id. at 60.

[12] Id. at 52.

[13] Id.

[14] Id. at 52-53, 60.

Petitioner argued in his Memorandum that the tape recording of his interview by Officer Dodson would have reflected his intoxication level.[15] This may or may not be true. However, there was alternate evidence submitted concerning Petitioner's intoxication level, namely, Officer Dodson's testimony indicating that although Petitioner had bloodshot eyes, was unsteady, sang, and smelled of alcohol, he was coherent, spoke clearly and without slurring, understood questions, and responded intelligently. The state court's factual determination as to Petitioner's alcohol level is presumed correct.[16] Having carefully reviewed the record, the Court concludes that the state courts' determination that Petitioner's waiver of his Miranda rights was knowing, intelligent, and voluntary was not contrary to, nor an unreasonable application of, clearly established federal law.[17]

### 2. Destruction of Tape-Recorded Statements

In his second claim, as further described in his Memorandum, Petitioner alleges that the destruction by the police of his taped statements and those of the victim to police violated his constitutional right to due process. Under Arizona v. Youngblood,[18] the failure to *preserve* potentially exculpatory evidence does not constitute a denial of due process unless the criminal defendant can show bad faith on the part of the

---

[15] See Memorandum at 14.

[16] See 28 U.S.C. § 2254(e)(1).

[17] See 28 U.S.C. § 2254(d)(1).

[18] 488 U.S. 51 (1988).

6

police.[19]  Petitioner has made no showing of bad faith on the part of the police in this case.[20]  Thus, the failure to *preserve* the tapes does not constitute a due process violation.[21]

In his objection, Petitioner asserts that the Colorado Court of Appeals incorrectly characterized his due process claim stemming from the destruction of the tapes as a "general claim of potential exculpatory value,"[22] which the court found be constitutionally insufficient under Banks v. People[23] and State v. Morales.[24]  Petitioner argues that he is contending, more specifically, that the taped statements were not only exculpatory, but also impeached the victim, and that it was unreasonable for the state appellate court to "rule on the destruction of petitioner's statements but fail to rule on the destruction of the victim's statements."[25]  However, the state Court of Appeals expressly noted Petitioner's argument that "the destroyed tape recordings had exculpatory value because the impeachment of a victim's account of a sexual assault and corroboration of a defendant's denial are always relevant in a sexual assault proceeding."[26]  Ultimately,

---

[19] Id. at 58; see also Bullock v. Carver, 297 F.3d 1036, 1056 (10th Cir. 2002).

[20] Officer Dodson testified that, pursuant to Avon Police Department policy, officers are allowed to reuse interview tapes unless they contain a confession.  State Court Record Vol. 5 at 13.

[21] See Bullock, 297 F.3d at 1056.

[22] State Court Record Vol. 2 at 327.

[23] 696 P.2d 293 (Colo. 1985).

[24] 844 S.W. 2d 885 (Tex. App. 1992).

[25] Petitioner's Objection at 2.

[26] State Court Record Vol. 2 at 327.

Petitioner's argument is the same with respect to both his own statements and the victim's statements: that they both had the potential to exculpate him (whether directly or by revealing untruthfulness on the part of the victim), and thus their destruction constitutes a due process violation. The Court concurs with the Colorado Court of Appeals that such a claim does not rise to the level of a due process violation.

Petitioner further objects to the Magistrate Judge's Recommendation on the ground that the Magistrate Judge "fail[ed] to acknowledge that police LIED to the court about the existence of the tapes."[27] However, Petitioner has cited to no portion of the record indicating that any police officer lied about the existence of the tapes, and the Court has found none. Rather, Officer Dodson testified that he did not mention the tapes, or the fact that they had been erased, at the suppression hearing because he "didn't feel it was relevant because that's our normal procedure and just to use the tapes only to refresh your memory while writing the report."[28] Officer's Dodson's omission, adequately explained, does not rise to the level of an attempt to deceive. Petitioner's objection lacks merit.

Lastly, Petitioner objects to the Recommendation because the Magistrate Judge stated therein that "the substance of the tape-recorded statements were [sic] disclosed to the petitioner by the prosecution,"[29] when, Petitioner argues, the written report made

---

[27] Petitioner's Objection at 3.

[28] State Court Record Vol. 5 at 20.

[29] Recommendation at 26.

8

from the tapes reflected only a small portion of the information contained on the tapes. Petitioner contends that there is no case law "even remotely close to the facts here where the police destroyed statements, lied about it to the court, then provided a tenth of what existed."[30] The question of whether any exculpatory evidence contained on the tapes was omitted from Officer Dodson's written report goes to the issue of whether there was a failure to *disclose*, as opposed to *preserve*, exculpatory evidence resulting in a violation of Petitioner's constitutional rights.[31] Under Brady v. Maryland,[32] the failure to *disclose* exculpatory evidence violates due process "irrespective of the good faith or bad faith of the prosecution."[33] In order to establish a Brady violation, Petitioner must show that: "(1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense."[34]

Respondents argue that under Morgan v. Gertz,[35] where a taped interview is destroyed but a written summary of the interview is provided, only the duty to preserve evidence under Arizona v. Youngblood is implicated, not the duty to disclose. The Court finds such a reading of Morgan overbroad. In Morgan, the substantive evidence at issue was the victim's denial of sexual abuse by the defendant during a first tape-

---

[30] Petitioner's Objection at 4.

[31] See Morgan v. Gertz, 166 F.3d 1307, 1309 (10th Cir. 1999).

[32] 373 U.S. 83 (1963).

[33] Id. at 87.

[34] Banks v. Reynolds, 54 F.3d 1508, 1516 (10th Cir. 1995).

[35] 166 F.3d 1307 (10th Cir. 1999).

recorded interview. Although the tape of that interview was later erased, the prosecution disclosed on several occasions during pretrial discovery the fact that the victim had denied any sexual abuse in the first interview. In the defendant's subsequent 42 U.S.C. § 1983 action, the United States Court of Appeals for the Tenth Circuit (Tenth Circuit) concluded that it was only the duty to preserve, not the duty to disclose, that was implicated in the state court proceedings because "[t]he state did not fail to disclose the fact that the girl did not inculpate Morgan in the first interview; the state provided Morgan with a written summary of the first interview."[36] The Tenth Circuit did *not* hold that the mere fact that the prosecution provided a written summary of the taped interview meant that the duty to disclose had been fulfilled; rather, the duty to disclose was fulfilled because the prosecution had disclosed the particular item of evidence at issue: the victim's initial statement that the defendant did not abuse her. Thus, this Court must look to whether the substance of any exculpatory evidence was disclosed, not the mere form of the disclosure, to determine whether the duty to disclose exculpatory evidence has been fulfilled.

The record contains no evidence of any material, exculpatory statements made by Petitioner while he was at the police station and being recorded that did not appear in Officer Dodson's written report, other than Petitioner's statement that he and the victim had engaged in consensual oral sex, and the trial court judge dismissed the charge based on oral sex for that very reason. Petitioner has contended that "at trial it

---

[36]Id. at 1309.

became obvious that there were many statements allegedly made by the Petitioner that were not included in Dodson's report."[37] The only alleged inconsistencies that Petitioner describes, however, are that "Dodson testified but did not include in his report that the Petitioner stated that BOTH he and the victim were smoking cigarettes that night, a claim the Petitioner vehemently denied; he testified that only HE smoked that night,"[38] and that "Dodson testified but did not include in his report that the Petitioner stated he went after the victim when she left his apartment because he was worried about her being dressed in his robe and carrying a gun."[39] Petitioner has not provided a record citation for this testimony, and the Court has not located such testimony in the record that has been filed in this Court. Nonetheless, Petitioner has failed to explain why such evidence would be exculpatory or material, and the Court finds that it is not. The Court agrees with the state trial court that the only potentially material, exculpatory evidence not included in the written report involved the charge concerning oral sex, which was dismissed. There was no unconstitutional failure to disclose under Brady.

### 3. Petitioner's Third Claim

The Magistrate Judge determined that Petitioner had failed to raise his third claim in state court in a procedurally proper manner, and had shown neither cause and

---

[37] Memorandum at 10.

[38] Id. at 10-11.

[39] Id. at 11.

11

prejudice for the default nor a resulting fundamental miscarriage of justice.[40] As a result, the Magistrate Judge properly concluded that the third claim was barred from review in this court for failure to exhaust state court remedies. Petitioner does not object to this aspect of the Magistrate Judge's Recommendation, and the Court agrees with and approves the Magistrate Judge's analysis and conclusion.

The Court has reviewed carefully, and approves and adopts, the remainder of the Magistrate Judge's Recommendation, to which no objections have been made.

For the foregoing reasons, it is

ORDERED that Petitioner's Objection To Magistrate's Recommendation (Doc. No. 28) is overruled. It is

FURTHER ORDERED that Petitioner David Crosby's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 (Doc. No. 2) is denied, and this action is dismissed with prejudice.

DATED at Denver, Colorado, this 28th day of January, 2009.

BY THE COURT:

_____
ZITA L. WEINSHIENK, Senior Judge
United States District Court

---

[40] See Hickman v. Spears, 160 F.3d 1269, 1271 (10th Cir. 1998).